*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| **DOROTHY A. GILBERT,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 06-99-B-W* |
| | ) | |
| **MICHAEL J. ASTRUE,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| *Defendant* | ) | |

*REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") appeal raises two issues: whether the residual functional capacity assigned by the administrative law judge is supported by substantial evidence and whether the jobs identified by the vocational expert are within that residual functional capacity. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that through the date last insured (December 31, 1994), the plaintiff suffered from back pain and carpal tunnel syndrome, impairments that were severe but which did not meet or equal the elements of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. Part

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted new Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 22, 2007 pursuant to Local Rule 16.3(a0(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to (*continued on next page*)

404 (the "Listings"), Findings 1, 3-4, Record at 21; that her allegations concerning her limitations were not fully credible, Finding 5, *id.*; that at the relevant time she had the residual functional capacity to lift up to 10 pounds frequently and 20 pounds occasionally and to sit, stand and walk for about 6 hours each in an 8-hour workday, with limitations including no more than occasional pushing and pulling, bending less than one-third of the time, no crawling or climbing, no constant use of hand controls, no constant work with the hands and no work around vibrating tools or machines, Finding 6, *id.* at 22; that she was unable to perform any of her past relevant work, Finding 7, *id.*; that, given her age (a younger individual between the ages of 45 and 49), education (high school or equivalent), lack of transferable skills and residual functional capacity at the relevant time (significant range of light work), use of Rule 202.20 of Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making led to the conclusion that there were a significant number of jobs in the national economy that the plaintiff could have performed, Findings 8-12, *id.*; and that the plaintiff accordingly was no under a disability as that term is defined in the Social Security Act at any time through the date last insured, Finding 13, *id.* The Appeals Council declined to review the decision, *id.* at 7-9, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 647 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

---

relevant statutes, regulations, case authority and page references to the administrative record.

The administrative law judge reached Step 5 of the sequential review process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 136, 147 n.5 (1987); *Goodermote*, 647 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

The plaintiff first contends that the hypothetical question posed to the vocational expert by the administrative law judge "used the term hands rather than the term upper extremities which had been used by the medical advisor" and that this change requires remand because "the medical evidence demonstrates impairments that go beyond just the hands." Plaintiff's Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 9) at 2-3. The hypothetical question to the vocational expert included the following relevant terms:

> So let's assume we find an individual who was under 50 years of age, who had a 12th grade education. And assume further I find that this individual could perform the exertional requirements of light work. She did, however, have some exertional limitations, she couldn't perform the whole, the full range of light work. She had some problems pushing and pulling because of her hand problems. She could not work at a job where she would have to push or pull frequently . . . but only occasionally, which is up to one-third of the time. . . . She should never . . . climb ropes, ladders or scaffolding. She would also not be able to work at a job where she was required frequent or constant use of hand control[s] because of her problems with her wrists, once again, and could not perform any repetitive work, constant work, rather, with constant or frequent work, not only using hand controls, but with her hands.

Record at 701-02. The medical expert had testified as follows, in relevant part:

> [I]t's all about repetitive use injury of her arms and hands. . . . More significant were her upper extremity symptoms. . . . [T]here was a lot of heavy, repetitive hand and wrist and forearm use involved. She had her first carpal tunnel release in '87 on the left and '88 on the right. And I believe an ulnar transplant at that time also. She had a release of a tenosynovitis

> [phonetic] and the trigger finger released also over the ensuing years. Both carpal tunnels were re-released with the left, which she believes was the last operation of the seven, and she had an [INAUDIBLE] in September of '95. So she probably had five or six operations during the time frame we're concerned about. There are [a] number of evaluations, by [Ciembroniewicz] for the back, by Main[e]n in '97, but addressing this period of the back and the wrists. By Dr. Wisely in September of '89. It seems they all felt that she could do some work. And I have to conclude from the record that is available for that period that I thought she could have done some light, non-repetitive upper extremity work during that period. However, that's not to say she had some symptoms relating to the wrists and hands. . . . But she did have an EMG in April of '94 of both arms which showed bilateral recurrent carpal tunnel syndrome [INAUDIBLE] had some re-release.

*Id*. at 697-98. From all that appears in the record, the medical expert seems to use the terms "wrists and hands" and "upper extremities" interchangeably himself. Counsel for the plaintiff was unable to identify any other specific physical limitations mentioned in the medical records and arising from the hypersensitivity of the plaintiff's elbow and left shoulder pain which he identified as "pre-DLI issues involving the upper extremities which went beyond the hands," Itemized Statement at 2 n.2, that were not included in the hypothetical question. In the absence of a showing that the emphasis in the hypothetical question on the hands instead of the upper extremities was likely to have affected the administrative law judge's decision, any such error in the question was harmless.

The plaintiff next contends that "each and every one of the job descriptions for the three jobs that the V[ocational] E[xpert] identified is outside the ALJ's RFC." Itemized Statement at 3. Again, the administrative law judge found that the plaintiff had the following residual functional capacity at the relevant time:

> Through December 31, 1994, the claimant had the following residual functional capacity: the claimant was able to lift up to 10 pounds frequently and up to 20 pounds on occasion, to sit for at least six hours in an eight hour workday, and to stand and walk for about six hours in an eight hour workday. She was limited to no more than occasional pushing and pulling and bending less than one third of the time. She was also limited to no crawling or climbing, no constant use of hand controls, no constant work with her hands, and no work around vibrating tools or machines.

4

Record at 22. The plaintiff asserts that each of the three jobs identified by the vocational expert requires frequent reaching and apparently concludes that they are therefore inconsistent with the assigned residual functional capacity. Itemized Statement at 3. However, neither the statement of residual functional capacity set forth above nor the hypothetical question to the vocational expert included any restriction on reaching. No reversible error may be predicated on the fact that each of the three jobs requires frequent reaching.

The plaintiff points out, *id.* at 4, that one of the three jobs — crossing guard — is a part-time job. *See Dictionary of Occupational Titles* ("DOT") (U.S. Dep't of Labor, 4th ed. rev. 1991), § 371.567-010 ("Guards street crossings during hours when children are going to or coming from school"). At Step 5, the jobs which the commissioner finds to be available for a claimant must be full-time jobs. *Carlisle v. Barnhart*, 392 F.Supp.2d 1287, 1290 (N.D.Ala. 2005) ("Therefore, if a plaintiff cannot perform his prior work, the burden is on the Commissioner at step five to show that the plaintiff can sustain full-time work."); *Carr v. Apfel*, 1999 WL 1489892 (N.D.Ohio, Sept. 29, 1999), at *5 (only full-time jobs are to be considered at step five). *See also Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000). Counsel for the commissioner refused at oral argument to concede that the crossing guard job could not constitute substantial gainful activity, which he asserted was the correct standard rather than full-time work, and stated without citation to authority that the DOT does not list jobs that are not capable of being performed at the level of substantial gainful activity. Nonetheless, counsel disavowed any reliance on the crossing guard job in connection with this case and I accordingly do not consider it further.

The plaintiff also argues that the remaining two jobs, specifically telephone operator and arcade attendant, are unavailable because they require frequent handling. Itemized Statement at 3. The vocational expert testified that the plaintiff would be able to work 40 hours per week at these jobs

5

with the limitations listed by the administrative law judge. Record at 703-04. The telephone operator job is described in the DOT as requiring handling "constantly." *Dictionary of Occupational Titles* § 235.662-022. This does appear to make the job inconsistent with the limitation in the residual functional capacity of "no constant work with her hands." At oral argument, counsel for the commissioner conceded that the telephone operator job was not a valid alternative in this case. I will not consider it further.

The arcade attendant position, however, requires frequent handling, not constant. *Id*. § 342.667-014. The DOT makes a distinction between "constant" and "frequent" activity, defining "frequent" as "from 1/3 to 2/3 of the time." *Id*. The administrative law judge used this definition in his hypothetical question to the vocational expert, albeit with respect to pushing and pulling rather than specifically working with the hands. Record at 702. But the question also states that the plaintiff should not perform "constant or frequent work . . . with her hands." *Id*. Given this specification in the question, the vocational expert's identification of the attendant position is not consistent with the Dictionary of Occupational Titles and so, in the absence of any explanation by the administrative law judge of a reason to override the conflict, it would have to be disregarded. *See generally* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) at 244. However, as counsel for the commissioner pointed out at oral argument, the administrative law judge's finding as to residual functional capacity was that the plaintiff was limited to "no constant use of hand controls, no constant work with her hands[.]" Record at 22. That finding excludes the reference to frequent work that was included in the hypothetical question posed to the vocational expert and is fully consistent with the DOT parameters for the arcade attendant position. Under these circumstances, it is the assigned residual functional capacity that governs, not the terms of

the hypothetical question. *See Pechatsko v. Commissioner of Soc. Sec.*, 369 F.Supp.2d 909, 910-11 (N.D. Ohio 2004)

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of March, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge